BRYAN CAVE LLP
Robert A. Wolf (RW 3419)
Chris M. LaRocco (CL 1774)
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000

*Counsel to Robert L. Geltzer, the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>KOLLEL MATEH EFRAIM, LLC, a/k/a MATEH EPHRAIM, LLC, a/k/a KOLEL MATEH EFRAIM,<br><br>Debtor. | **Chapter 7**<br><br>**Case No. 04-16410 (SMB)** |
| ROBERT L. GELTZER, as Chapter 7 Trustee of the Estate of the Debtor KOLLEL MATEH EFRAIM, LLC, a/k/a MATEH EPHRAIM LLC, a/k/a KOLEL MATEH EFRAIM,<br><br>Plaintiff,<br>-against-<br><br>JACK LEFKOWITZ and ABRAHAM STEINWURZEL,<br><br>Defendants. | **Adversary Proceeding No.**<br><br>**COMPLAINT** |

Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee"), of the debtor, Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim, LLC, a/k/a Kolel Mateh Efraim (the "Debtor"), by his counsel Bryan Cave LLP, as and for his Complaint, alleges as follows against the above-captioned defendants (collectively, "Defendants"), upon information and belief obtained from, among other things, examinations conducted pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and available documents and records of the Debtor and other publicly available documents:

## NATURE OF THE ACTION

1. By the instant adversary proceeding, the Trustee seeks to recover damages suffered by the Debtor as a result of various breaches by the Defendants of their fiduciary duties owed to the Debtor.

## THE PARTIES

2. The Trustee is a resident of the State of New York and is a licensed attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128. The Trustee is the duly appointed and qualified Chapter 7 Trustee of the Debtor, having been appointed interim Trustee on or about October 29, 2007, and having thereafter become, and through the present continued as, permanent Trustee pursuant to 11 U.S.C. § 702(d) and by operation of law.

3. The Debtor purports to be a New York limited liability company with a principal place of business currently located at 751 Second Avenue, New York, New York 10017.

4. At all relevant times, Defendant Jack Lefkowitz ("Lefkowitz") was and is an individual residing at 1526 52nd Street, Brooklyn, New York 11219, and purports to be the sole member of the Debtor.

5. At all relevant times, Defendant Abraham Steinwurzel ("Steinwurzel") was and is an individual residing at 1264 56th Street, Brooklyn, New York 11219, and was the Manager of the Debtor.

## JURISDICTION AND VENUE

6. The United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. By virtue of 28 U.S.C. § 157(a), and the Order, dated July 10, 1984, of District Court Judge Robert J. Ward of the United States District Court for the Southern District of New York, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

8. In the event that any part of the claims contained herein is found to be "non-core", the Trustee consents to the entry of final orders and judgments by the Bankruptcy Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

9. The predicate for the relief sought herein is the common law of the State of New York.

10. Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

**Background**

11. On or about July 26, 1999, the Debtor, under the name, Mateh Ephraim LLC, was organized as a limited liability company under the laws of the State of New York. At all relevant times the Debtor was in the business of, among other things, the facilitation of real estate development and investments.

C046038/0216345/1481318.9

12. From on or about July 26, 1999, through and including the Petition Date (as defined below), Lefkowitz was the sole member of the Debtor, which operated under the name Mateh Efraim LLC.

13. At some point subsequent to the Debtor's formation, on or about August 1, 1999, Steinwurzel became the Manager of the Debtor and had managerial duties with respect to the Debtor, as described in an affidavit by Steinwurzel, dated May 21, 2007, submitted in the above-captioned bankruptcy case, that included, "managing the Debtor, paying its account payables, and helping raise funds for the Debtor."

**The Meadows Property Contract**

14. On or about April 29, 2004, a contract of sale (the "Contract") for property commonly known as the Meadows Resort, located at 1141 County Road 114, Fosterdale, New York (the "Meadows Property"), was entered into between an individual named Aron Fixler ("Fixler") and an entity named Helen-May Holdings, LLC ("Helen-May").

15. On or about May 18, 2004, Fixler assigned his interest in the Contract to the Debtor.

16. The Debtor remitted a downpayment on the Contract to Helen-May totaling $100,000.

17. On or about the date contemplated for closing according to the Contract, the Debtor informed Helen-May that it would be unable to close due to a lack of funds.

18. On or about June 3, 2004, Helen-May and the Debtor executed a letter agreement (the "Occupancy Agreement") that set forth terms for the Debtor's occupancy of the Meadows Property, pending a closing of the sale thereof to the Debtor under the Contract. The Occupancy Agreement included terms, among others: (i) authorizing the Debtor's occupancy of the

4

Meadows Property, pending a closing of the sale pursuant to the Contract, (ii) extending the closing date under the Contract until September 27, 2004, (iii) making the Debtor responsible for payment of Helen-May's carrying charges with respect to the Meadows Property while the Debtor occupied the same prior to the sale, (iv) increasing the downpayment pursuant to the Contract from $100,000 to $140,000, and (v) imposing a fee, for the Debtor's failure to close on the new closing date of September 27, 2004, of $1,500 for each day of its continued occupancy of the Meadows Property past the new September 27, 2004 closing date.

19.    The Debtor remitted the additional downpayment amount of $40,000 provided for under the Occupancy Agreement.

20.    The Debtor commenced its occupancy of the Meadows Property under the Occupancy Agreement in or about June 2004.

21.    On or about June 23, 2004, the Debtor purchased two properties adjacent to the Meadows Property (the "Debtor Properties") for a total of approximately $470,000.

22.    On or about September 22, 2004, the Debtor not having closed on the Meadows Property, Helen-May and the Debtor executed another letter agreement (the "Extension Agreement"), which included the following relevant terms: (i) a further extension of the closing date under the Contract until November 29, 2004, and (ii) provision for the payment by the Debtor of an additional sum of $20,250 upon return of the Extension Agreement and another $20,250 on or before October 27, 2004.

23.    On or about September 29, 2004, counsel for the Debtor sent correspondence to counsel for Helen-May indicating that a check representing the first payment due under the Extension Agreement had been sent, but that payment on that check would be stopped due to an issue regarding the actual acreage of the Meadows Property.

5

**The Debtor's Bankruptcy and Its Continued Occupancy of the Meadows Property**

24. On or about October 4, 2004, (the "Petition Date") the Debtor filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York under the caption, In re: Kollel Mateh Efraim LLC, Case No. 04-16410 (the "Bankruptcy Case").[1]

25. Subsequent to the Petition Date, and subsequent to November 29, 2004, the date specified for closing in the Extension Agreement, the Debtor continued to occupy the Meadows Property.

26. At some time subsequent to the Petition Date, Bankruptcy Judge Blackshear ordered from the bench that the Debtor pay to Helen-May $5,000 per month for the Debtor's use and occupancy of the Meadows Property.

27. In or about May 2005, the Debtor ceased making the regular monthly $5,000 use and occupancy payments called for under to Judge Blackshear's order.

28. On or about June 12, 2005, Helen-May filed a motion with this Court seeking, among other things, a lifting of the automatic stay so as to permit Helen-May to evict the Debtor from the Meadows Property and, in the event the Debtor continued to occupy the Meadows Property, the payment of fair market rent, estimated by Helen-May to be $12,000 per month, for the Debtor's use and occupancy, pursuant to 11 U.S.C. 362(d)(3)(B).

29. At a hearing before this Court on or about July 20, 2005, Chief Bankruptcy Judge Bernstein ruled from the bench that, effective July 1, 2005, the Debtor, for its continued

---

[1] On or about November 24, 2004, the Debtor filed a second Chapter 11 petition with this Court, under the caption, In re: Mateh Ephraim LLC d/b/a Kollel Mateh Efraim, LLC, Case No. 04-17525, which was purportedly filed as a correction to its first petition. By Order dated November 27, 2006, this court dismissed the second bankruptcy case and ordered that the caption of this Bankruptcy Case be amended to its current form.

6

occupancy of the Meadows Property, would be obligated pay adequate protection payments to Helen-May of $11,677 per month, plus real estate tax payments as they became due on the property, which taxes equaled $1,876 per month. Therefore, the monthly adequate protection payments due to Helen-May by the Debtor pursuant to Judge Bernstein's directive totaled $13,553 per month (the "Adequate Protection Payments").

30. At the July 20, 2005 hearing, it was Helen-May's contention that the Adequate Protection Payments were to be paid in addition to the $1,500 per day fee set forth in the Occupancy Agreement for the Debtor's continued occupancy of the Meadows Property.

31. On or about April 25, 2007, Judge Bernstein issued an Order in accordance with his oral ruling at the July 20, 2005 hearing that directed the Debtor to make the Adequate Protection Payments to Helen-May in the amount of $13,553 per month, and also ordered that the Debtor pay to Helen-May within 30 days the amount of $210,120, representing the $284,613 of Adequate Protection Payments in arrears owed from July 2005 until April 2007, less a credit of $74,493, which was the amount of Adequate Protection Payments the Debtor had paid during that period.

32. The Debtor failed to make the $210,120 payment of the Adequate Protection Payments in arrears as directed by the Court. Accordingly, on or about May 14, 2007, Helen-May moved by Order to Show Cause for an order, among other things, lifting the Bankruptcy Code's automatic stay with respect to the Meadows Property and holding the Debtor in contempt for failing to make the Adequate Protection Payments in arrears.

33. In opposition to Helen-May's request to hold the Debtor in contempt, Steinwurzel, in his capacity as Manager of the Debtor, submitted an affidavit, dated May 21, 2007 (the "Steinwurzel Affidavit"), stating that, "the Debtor simply does not have the funds

7

available to pay" the Adequate Protection Payments. Further, Steinwurzel stated, "the Debtor has subsisted on insider loans and donations from its congregation. At the present time the Debtor has an account balance of $61.73." Indeed, as will be further detailed below, the Debtor did not collect any rental payments, or other payments, from those who occupied and/or used portions of the Meadows Property during the more than three-year period in which the Debtor was in possession thereof.

34. The Steinwurzel Affidavit also stated, "Although the Debtor does own (2) two pieces of real property, they do not generate any rental income."

35. On or about June 5, 2007, this Court entered an Order (the "Lift Stay Order") lifting the automatic stay as to Helen-May, thereby allowing Helen-May to exercise all of its rights and remedies with respect to the Meadows Property.

36. On or about June 15, 2007, Helen-May sent the Debtor a Ten Day Notice to Quit and Vacate (the "Quit Notice"), which stated, among other things, that Helen-May had terminated the Occupancy Agreement and that the Debtor must surrender its possession of the Meadows Property by June 26, 2007. The Debtor did not cease occupancy of the Meadows Property within the ten-day period set forth in the Quit Notice; rather, it continued its occupancy of the Meadows Property without collecting any rent or any income therefrom.

37. On or about August 10, 2007, this Court entered an Order and Judgment (the "Judgment") granting Helen-May a judgment against the Debtor in the amount of $245,779 representing the Adequate Protection Payments in arrears up to that date. No portion of that Judgment amount was ever paid by the Debtor to Helen-May.

38. Pursuant to the Lift Stay Order, on or about August 27, 2007, Helen-May initiated a proceeding (the "Eviction Proceeding") in the Justice Court of the Town of Cochecton,

Sullivan County, New York, to evict the Debtor from its occupancy of the Meadows Property. Upon being served with the petition in the Eviction Proceeding, the Debtor not only continued its occupancy of the Meadows Property without collecting any rent or other income therefrom, but it made a motion to dismiss the Eviction Proceeding.

39. The Bankruptcy Case continued under Chapter 11 of the Bankruptcy Code until it was converted to a case under Chapter 7 by Order of this Court dated October 25, 2007. As of the date of the conversion of the Bankruptcy Case, the Debtor continued in occupancy of the Meadows Property, again without collecting any rent or other income therefrom.

40. On or about, November 20, 2007, subsequent to the Trustee's appointment as Chapter 7 trustee, the Trustee and Helen-May entered into a stipulation in the Eviction Proceeding whereby the Trustee consented to the eviction of the Debtor from the Meadows Property.

41. Notwithstanding the Debtor's occupancy of the Meadows Property, through on or about November 20, 2007, the date of the stipulation in the Eviction Proceeding, the Debtor failed to make any payments to Helen-May for (i) any portion of the Judgment amount, (ii) any portion of the $1,500 per day fee provided for under the Occupancy Agreement, or (iii) other Adequate Protection Payments or other payments relating to its occupancy of the Meadows Property subsequent to the Judgment.

**The Debtor's Use of the Meadows Property**

42. During the period of the Debtor's occupancy of the Meadows Property, and of the concomitant dispute regarding amounts owed by the Debtor to Helen-May as a result of that occupancy, the Debtor, by and through the Defendants, allowed for the use of the Meadows Property by several groups, without collecting any payment for such use.

9

43. In the summer of 2004, Defendants knowingly and intentionally used the Meadows Property to let out rooms on a nightly and/or weekly basis to families and individuals as a weekend retreat. Although the Debtor's Chapter 11 petition indicated that the Debtor earned $300,000 in income in the year 2004, Lefkowitz testified at his Bankruptcy Rule 2004 Examination that none of the "few hundred thousand dollars" collected from those who used the premises for those purposes were collected by the Debtor.

44. Also in the summer of 2004, Defendants knowingly and intentionally allowed the Meadows Property and the Debtor Properties to be used to operate a summer camp for Jewish boys aged 13 to 15 years old (the "Camp"). According to the testimony of Lefkowitz at his Bankruptcy Rule 2004 Examination taken on January 30, 2008, in the summer of 2004 there were 25 to 30 such boys who attended the Camp, whose director was Steinwurzel. Defendants knowingly and intentionally permitted such use of the Meadows Property and the Debtor Properties by the Camp without requiring the Camp or Steinwurzel to pay anything to the Debtor for such use.

45. In the summer of 2005, Defendants again knowingly and intentionally allowed the Meadows Property and the Debtor Properties to be used to operate the Camp, which remained under the direction of Steinwurzel. According to the testimony of Steinwurzel at his Bankruptcy Rule 2004 Examination taken on March 28, 2008, in the summer of 2005 there were 50 to 60 boys who attended the Camp. Defendants knowingly and intentionally permitted such use of the Meadows Property and the Debtor Properties by the Camp without requiring the Camp or Steinwurzel to pay anything to the Debtor for such use.

46. Upon information and belief, in the summer of 2006, Defendants again knowingly and intentionally allowed the Meadows Property and the Debtor Properties to be used to operate

10

the Camp, which remained under the direction of Steinwurzel. Defendants knowingly and intentionally permitted such use of the Meadows Property and the Debtor Properties by the Camp without requiring the Camp or Steinwurzel to pay anything to the Debtor for such use.

47. In the summer of 2007, Defendants knowingly and intentionally used the Meadows Property to allow families and individuals to stay at the property as a weekend retreat. No money was collected for this use of the Meadows Property.

48. Also in the summer of 2007, Defendants again knowingly and intentionally allowed the Meadows Property to be used to operate the Camp, which remained under the direction of Steinwurzel. Defendants knowingly and intentionally permitted such use of the Meadows Property by the Camp without requiring the Camp or Steinwurzel to pay anything to the Debtor for such use.

## COUNT ONE

### CLAIM FOR BREACH OF FIDUCIARY DUTIES OF DUE CARE
### AGAINST LEFKOWITZ AND STEINWURZEL

49. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

50. Lefkowitz, as the sole member of the Debtor, and Steinwurzel, as Manager of the Debtor, each owed fiduciary duties to the Debtor to exercise the care, diligence and skill that members, directors and officers of a company would exercise under comparable circumstances, and with a view to the Debtor's best interests.

51. Upon information and belief, by virtue of the acts and omissions described in this Complaint, Defendants failed to exercise the requisite due care, diligence and skill, and instead acted knowingly and willfully against the interests of the Debtor, and in furtherance of their own

C046038/0216345/1481318.9

personal interest, thereby violating their fiduciary duties to the Debtor. Specifically, the Defendants breached their fiduciary duties to the Debtor by knowingly and intentionally:

(a) Causing the Debtor to continue in occupancy of the Meadows Property for more than four years without collecting any fees or other payments from various third parties whom the Defendants permitted to use portions of the property, including the Camp directed for four consecutive summers by Defendant Steinwurzel (and, according to Steinwurzel's testimony at his Bankruptcy Rule 2004 Examination, attended by one of Lefkowitz's sons for at least one of those summers), thereby depriving the Debtor from realizing any income from such use;

(b) Causing the Debtor to remain in continual occupancy of the Meadows Property for more than three years without renting or letting out same to a third party or parties for a fee(s) collected by the Debtor, thereby depriving the Debtor from realizing any income from the Meadows Property while the Debtor occupied same;

(c) By virtue of their acts and omissions set forth in (a) and (b) immediately above, depriving the Debtor of the opportunity to realize income that would have been available to pay the Court-ordered Adequate Protection Payments and payments under the Occupancy Agreement due from the Debtor to Helen-May, respecting which Helen-May has asserted a secured claim in the Bankruptcy Case in the amount of $245,779.00 and a Chapter 11 administrative claim in excess of $3 million against the Debtor's estate;

(d) Permitting the rent-free use of the Meadows Property for four consecutive summers (2004-2007) by the Camp directed by Defendant Steinwurzel and attended by numerous teenage boys, which use resulted in substantial deterioration and damage to the improvements located on the property, respecting which Helen-May has asserted additional claims against the Debtor's estate in an as yet undetermined amount; and

(e) Permitting the rent-free use of portions of the Debtor Properties for at least three consecutive summers (2004-2006) by the Camp directed by Defendant Steinwurzel and attended by numerous teenage boys, which use resulted in substantial deterioration and damage to the improvements located on those properties.

52. Upon information and belief, as a direct and proximate result of Defendants' acts and omissions, the Debtor has been substantially injured and suffered damages in an amount to be determined at trial, currently estimated to be in excess of $3.3 million.

**WHEREFORE**, the Trustee as Plaintiff respectfully requests that this Court grant judgment for the Trustee on behalf of the Debtor's estate as follows:

1. On Count One, a determination that Defendants breached their fiduciary duties to the Debtor, and a judgment jointly and severally against those Defendants in an amount to be determined at trial, currently estimated to be in excess of $3.3 million; and

2. On Count One, reasonable attorney's fees in connection with this matter; and

3. For such other and further relief as the Court may deem just and proper.


Dated:   New York, New York
         June 16, 2008

                                    BRYAN CAVE LLP

                                    Counsel to the Chapter 7 Trustee


                                    By: /s/ Robert A. Wolf
                                         Robert A. Wolf (RW-3419)
                                         Chris M. LaRocco (CL-1774)
                                    1290 Avenue of the Americas
                                    New York, New York  10104
                                    Telephone:  (212) 541-2000
                                    Facsimile:  (212) 541-4630