# HELLER, HOROWITZ & FEIT, P.C.

JACOB W. HELLER
ELI FEIT
STUART A. BLANDER
MAURICE W. HELLER
ALAN A. HELLER
CLIFFORD J. BOND
JOSEPH S. SCHICK
ALLEN M. EISENBERG

EVAN R. SHUSTERMAN

RICHARD F. HOROWITZ
(1979-2008)

ATTORNEYS AT LAW
292 MADISON AVENUE
NEW YORK, N.Y. 10017
(212) 685-7600

OF COUNSEL
MARTIN STEIN
AMY E. MOSERY

CABLE ADDRESS
HELLFEITER, N.Y.

TELECOPIER
(212) 696-9459

WORLD WIDE WEB
HTTP://WWW.HHANDF.COM

WRITER'S E-MAIL
SABLANDER@HHANDF.COM

March 13, 2009

*VIA EMAIL: Bernstein.chambers@nysb.uscourts.gov*

The Honorable Stuart M. Bernstein
Chief Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
1 Bowling Green
New York, New York 10004

   Re: *Geltzer v. Lefkowitz and Steinwurzel*
      *Adv. Proceeding No. 08-01265*

Dear Judge Bernstein:

  We represent the defendants in the above referenced Adversary Proceeding. This Letter is submitted pursuant to Local Rule 7056-1(a) to request a pre-motion conference with respect to the defendants' proposed motion for summary judgment dismissing the "breach of fiduciary duty" claims asserted against them by the Trustee. Discovery has now been completed; for each of the reasons outlined below we believe that the defendants are, based on the undisputed factual record, entitled to dismissal of these claims as a matter of law.[1]

## The Claims Asserted In the Adversary Complaint

  In his Adversary Complaint, the Trustee alleges that Mr. Lefkowitz, as the "sole member" of Mateh Ephraim, LLC (the "LLC") (Complaint, ¶4), and Rabbi Steinwurzel, as the purported "Manager" of the LLC (*Id.*, ¶5), breached their "fiduciary duties of due care" to the LLC by "knowingly and intentionally" permitting certain real property (the "Meadows Property") which the LLC occupied as a "vendee in possession" under an "Occupancy Agreement" with the seller/owner, Helen-May Holdings, Inc., to be used for a

---

[1] Together with the Motion, defendants will, of course, file a Statement of Undisputed Facts, as required by Rule 7056-1.

182575.5

HELLER, HOROWITZ & FEIT, P.C.
Honorable Stuart M. Bernstein
March 13, 2009
Page 2

number of summers as a Children's Camp "without requiring the Camp to pay anything to the Debtor for such use." (*See*, Complaint ¶¶18, 20, 22, 42-48) According to the Adversary Complaint, the defendants thereby "deprived the Debtor from realizing any income from such use", resulting in damages "currently estimated to be in excess of $3.3 million." (*Id.* ¶¶51-52). Specifically, the Adversary Complaint alleges that had the Meadows Property been leased on a "for profit" basis (either to the Summer Camp or some other third party), the LLC would have generated "income that would have been available to pay the court-ordered Adequate Protection Payments and payments under the Occupancy Agreement due from the Debtor to Helen-May..." (*Id.* ¶51(c)).

**Rabbi Steinwurzel Was Not a "Manager" of the**
**LLC and Owed No Fiduciary Duty To The LLC**

While the Complaint alleges that Rabbi Steinwurzel was "the Manager" of the LLC, the evidence is *undisputed* that Mr. Lefkowitz was the *sole* "managing member" of the Limited Liability Company. [2] The evidence is also undisputed that whatever documents Rabbi Steinwurzel may have signed or submitted on behalf of the LLC, all financial and/or business decisions relating to the LLC were *in fact* made by Mr. Lefkowitz; and that Rabbi Steinwurzel had no management or discretionary authority or responsibility whatsoever. His sole involvement with the Meadows Property and the LLC was (i) his operation of a summer camp at the Meadows Property during the summers of 2004 through 2007, with the consent and approval of Mr. Lefkowitz; and (ii) his performance of certain clerical or ministerial tasks (paying bills, etc.) at the direction of Mr. Lefkowitz.

Thus, *in connection with his operation of his Summer Camp on the Property*, Rabbi Steinwurzel raised funds and paid certain expenses (insurance, utilities, repairs, etc.) relating to his Camp's use of the Property; made sure the Property was maintained during the summer months; and also paid accounts payable, opened a bank account on behalf of the LLC and facilitated the making of certain court ordered payments to the owner, Helen-May. But the deposition testimony establishes that all of this was done *not* on behalf of the LLC, but in his capacity as the "director" and "Rabbi" of the Summer Camp, an entity temporarily occupying the Property under the consent of the LLC and its managing member, Mr. Lefkowitz (or, in some cases, as a clerical aide to Mr. Lefkowitz).

Under Sections 401, 408 and 409 of the Limited Liability Company Act, the managing member of a limited liability company is charged with the "management of the

---

[2] The Answer (at ¶3) specifically denies that Rabbi Steinwurzel was a "manager" of the LLC. Moreover, in the Joint Pre-Trial Order in Adversary Proceeding No. 07-02052, the Trustee has stipulated that "from the time of the LLC's formation through and including the present Mr. Lefkowitz has been and still is the sole member and the Managing Member of the LLC." (Order, p. 5)

**HELLER, HOROWITZ & FEIT, P.C.**

Honorable Stuart M. Bernstein
March 13, 2009
Page 3

limited liability company" and has a fiduciary duty to act "in good faith and with the degree of care that an ordinarily prudent person in a like position would use under similar circumstances." Specifically, Section 401(a) of the Act provides that "unless the articles of organization provides for management of the limited liability company by a manager or managers or a class or classes of managers, management of the limited liability company shall be vested in its members . . ." [3]

Here, Rabbi Steinwurzel can have no liability for a "breach of fiduciary duty" premised upon his alleged failure to rent the Property on a "for profit" basis on behalf of the LLC, when (i) when the Trustee concedes that at all times Mr. Lefkowitz has been "the sole member and the Managing Member of the LLC"; and (ii) the evidence establishes that *at the very most* Rabbi Steinwurzel performed ministerial duties on behalf of the LLC and had no authority or responsibility with respect to such discretionary business matters. To impose liability upon Rabbi Steinwurzel under these circumstances would be no different than holding the secretary of a corporation's president (or the company's bookkeeper) liable for breach of fiduciary duty because the secretary, *e.g.*, opened a bank account or placed orders with vendors at the president's direction, or the bookkeeper paid bills directed and approved by the president. [4]

**There is No Evidence That The Meadows Property
Could Have Been Leased on a "For Profit" Basis
to the Summer Camp or Any Other Party**

The evidence is also undisputed that the Summer Camp operated by Rabbi Steinwurzel did not have available to it funds to pay "direct rent" to the LLC for its use of the Meadows Property (in addition to the payment of expenses to third parties, discussed in the next paragraph). Nor will the Trustee be able to rebut the defendants' showing that the Meadows Property could not have been rented or leased to any other potential tenant or occupant during the summers of 2004 through 2007 on a "for profit" basis. Indeed, during their depositions, the Griffins were not aware of any potential rental opportunities.

Absent such a potential source of revenue, the entire "waste" theory of the Trustee – which is predicated upon the assumption that the defendants "wrongfully" failed to exploit

---

[3] The Articles of Organization for the LLC provide (in paragraph "Fifth") that "the Company is to be managed by one or more members."

[4] Rabbi Steinwurzel's May 21, 2007 Affidavit is not to the contrary. In that Affidavit, he stated that he was "the Rabbi" for the LLC and "work[ed] closely with the Debtor's managing member, Jack Lefkowitz, in performing many functions for the Debtor, including managing the Debtor ..." Even putting to one side the provisions of Section 401(a) of the Act, which vests sole managerial authority in the sole member, Mr. Lefkowitz, the Affidavit only confirms that at the very most Rabbi Steinwurzel assisted Mr. Lefkowitz in certain ministerial or clerical tasks.

**HELLER, HOROWITZ & FEIT, P.C.**

Honorable Stuart M. Bernstein
March 13, 2009
Page 4

the existing "profit potential" of the Property – necessarily falls. *See Shetty v. Nastel Technologies, Inc.,* 21 Misc. 3d 1130(A), 2008 WL 4901163 at *5 (Sup. Ct. Suffolk Cty. 2008) (no breach of fiduciary claim when company "did not suffer monetary damage as a result" of actions complained of).

In fact, both Rabbi Steinwurzel and Mr. Lefkowitz testified without contradiction that even though the Summer Camp did not pay direct rent to the LLC, the LLC nevertheless benefited by (i) the improvements made by the LLC to the Meadows Property (such as the installation of a sewer system, air conditioning system and telephone system, installation of wells, roofing work, plumbing repairs and other "capital expenditures" valued at hundreds of thousands of dollars) and (ii) the Summer Camp's payment of expenses which otherwise would have been the financial obligation of the LLC.

**The Acts of the Defendants Are Protected
by The "Business Judgment Rule"**

Under the "business judgment" rule, a Court will not "second guess" a business decision made "in good faith and in the exercise of honest judgment and in the lawful and legitimate furtherance of corporation purposes." *Auerbach v. Bennett,* 47 N.Y. 2d 619, 629 (1979) Here, there is no evidence that either Mr. Lefkowitz or Rabbi Steinwurzel personally siphoned or diverted assets from the LLC for their benefit or for "non corporate" purposes. Rather, the Trustee appears to be contending that there was a breach of fiduciary duty because no legitimate corporate purpose was served by permitting the Summer Camp to occupy the Property on a "rent free" basis and by continuing to hold possession of the Meadows Property, rather than "voluntarily" surrender possession to Helen-May.

Putting aside the fact that there were no "paying tenants" available for the Meadows Property, it is undisputed that it was not until March 2007 that this Court held that the settlement reached by Mr. Lefkowitz with Helen-May's then attorney was not enforceable. It is, of course, impossible to contend that Mr. Lefkowitz's continued occupancy of the Meadows Property in expectation that an "on the record" settlement would be enforced is somehow an *unreasonable* exercise of his business judgment.

Nor was Mr. Lefkowitz's decision to permit the LLC to continue in occupancy after this Court refused to enforce the settlement in any respect outside the scope of the "business judgment" rule. It was certainly not unreasonable for Mr. Lefkowitz to continue to hold onto the Property in the hope that he might "make a new deal" with Helen-May under which the LLC (which already owned the two adjacent parcels) would purchase the Property. This is true even though the path chosen presented a "risk of loss" to the LLC. *See Hillsboro National Bank v. Commissioner of Internal Revenue,* 460 U.S. 370, 385 n. 18 (1983).

**HELLER, HOROWITZ & FEIT, P.C.**

Honorable Stuart M. Bernstein
March 13, 2009
Page 5

In this regard, it is not enough for the Trustee to say that (with the benefit of hindsight) he might balance the competing considerations differently in order to minimize the potential exposure of the LLC. The dispositive point is that Mr. Lefkowitz's decision was *at the time* a reasonable one taken in good faith; that the Trustee can "after the fact" proffer an equally reasonable alternative is not a basis for avoiding summary judgment. *Shapiro v. Rockville Country Club,* 2 Misc. 3d 1002(A), 2004 WL 398980 at *12 (Sup. Ct. Nassau Cty. 2004) [5]

### As a Matter of Law, The LLC Suffered No Damage

Even if Mr. Lefkowitz's decision was not protected by the "business judgment rule", the claims for waste and breach of fiduciary duty would nevertheless have to be dismissed because *as a matter of law* the LLC suffered no damage. Thus, it is undisputed that at all relevant times the LLC had no assets (other than its right to purchase the Meadows Property from Helen-May, as well as its ownership of the two adjacent parcels).[6] Under these circumstances, the simple fact is that there were no assets available to "waste"; that the LLC may have incurred additional *legal liability* resulted in no *actual injury* to the LLC, but only a meaningless and uncollectible judgment. *See R.M. Newell Co. v. Rice,* 236 A.D. 2d 843 (4th Dept. 1997)

If anything, Mr. Lefkowitz benefited the LLC by enabling it to remain in possession of the Meadows Property without paying anything to the owner, thereby preserving for the benefit of the LLC the possibility that some future development would result in an advantageous business opportunity which could be profitably exploited by the LLC. Once again, this Court cannot possibly "second guess" Mr. Lefkowitz in this decision.

### The "For Profit" Lease of the Meadows Property by the LLC Was Not Permitted or Contemplated by the Occupancy Agreement

The Occupancy Agreement does not by its terms authorize the LLC to lease or rent the Property, but instead provides that "the Meadows [Property] will be operated [by the LLC] in accordance with its present use only." During their depositions, Paul and Irene Griffin, the principals and operators of Helen-May, testified that the "present use" of the Meadows was as a "resort", and *not* as a summer camp. Thus, the entire "waste theory" of

---

[5] In denying defendants' motion to dismiss the Adversary Complaint, this Court held only that the Complaint on its face stated a cause of action, but did not foreclose a motion for summary judgment made at the conclusion of discovery.

[6] It is our understanding that the Trustee recently sold the two adjacent parcels for an aggregate purchase price of $175,000.

**HELLER, HOROWITZ & FEIT, P.C.**

Honorable Stuart M. Bernstein
March 13, 2009
Page 6

the Trustee presupposes a requirement that Mr. Lefkowitz's fiduciary duty mandated that he direct the LLC to violate the terms of the Operating Agreement in order to generate income for the LLC. This makes no sense.

Indeed, both Mr. Griffin and Helen-May's attorney, Daniel J. Scher, Esq., testified that when the Occupancy Agreement was drafted and signed, they anticipated that the term of the Occupancy Agreement would not extend more than a few months and they did not contemplate that the LLC would rent or lease the Property. For this reason as well, defendants cannot be held liable for breach of fiduciary duty based upon the alleged failure to perform an act (leasing the Property on a "for profit" basis to a third party) which was not contemplated by the Agreement.[7]

* * *

For all of these reasons, we respectfully request a pre-motion conference to discuss this Motion for Summary Judgment.

Respectfully submitted,

/s/

SAB/cfd                                    Stuart A. Blander

cc: Robert A. Wolf, Esq. (via email: rwolf@ssd.com)

---

[7] In denying defendants' motion to dismiss the Complaint on this ground, the Court did not foreclose a motion for summary judgment based on the evidence of the parties' intent under the Occupancy Agreement and the actual "present use" of the Meadows Property.